ROBERT H. KENT & COMPANY, INC.
*v.* BURTON, ET UX.

[No. 105, September Term, 1967.]

*Decided February 9, 1968.*

694

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SINGLEY, JJ.

*Henry E. Weil,* with whom were *Shapiro & Weil* on the brief, for appellant.

*Joe M. Kyle,* with whom were *Kyle & Jorgensen* on the brief, for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

Appellant (the broker) sued the appellees (Burton) to collect a commission of $3,210 on the sale of a parcel of real estate in Montgomery County. Burton sold his property 3 days after the expiration of the listing agreement with the broker. The trial judge ordered the entry of a judgment for costs in favor of Burton. We agree.

Our recital of the facts will be based upon the agreed statement filed pursuant to Maryland Rule 828 g. The listing agreement, dated 1 November 1965, gave the broker "the exclusive privilege for four months" to sell Burton's property for $57,000.' The agreement provides further that "if within two months after the expiration of * * * [the] listing contract a sale is made to any person to whom the property has been shown" Burton agrees to pay the broker a fee of 6% of the sale price. The contract expired 1 March 1966; the two month period ended 1 May.

On 16 February Mrs. White, an employee of the broker, showed the property to Mrs. James Parreco. Three days later Mrs. White took Mr. Parreco and his father to visit the property. It turned out that Burton knew Parreco's father "rather well." During their 45 minute visit Burton, for reasons undisclosed, made a few disparaging remarks about the house.

Mrs. White, on 21 February, having learned of the existence of a recent appraisal of the property made by Suburban Trust Company, passed this information on to Parreco. The amount of the appraisal was $54,450. On 24 February Parreco told her to offer $50,000 "all cash." Mrs. White prepared a con-

tract, which Parreco signed, and delivered it to Mr. Rickman, the broker's sales manager. Burton, when told of the offer, refused to let Rickman come to his home to discuss it. On the following day, however, he relented and agreed that the contract should be amended to show a consideration of $55,850, a new settlement date, and an increase in the deposit from $1,000 to $5,500. Burton signed the contract, as amended, adding a proviso that he would not be bound thereby until his wife signed. At the time she was out of town.

On 27 February Mrs. White went to see Parreco and after some discussion a new contract was prepared. A consideration of $54,450 (the appraisal figure) was inserted along with a provision dealing with certain furnishings. The deposit reverted to $1,000. Burton refused to consider this contract adding that, in any event, he would not sign it unless the broker reduced its commission by $1,400, which the broker refused to do.

When the broker tried to get a renewal of the listing Burton said he "was no longer sure" he wanted to sell his house and that, should he change his mind, he would "sell it himself." According to the broker's employee he said he intended to sell it himself after the expiration of 60 days.

On 3 May Burton, accepting a deposit of $1,000, sold the property to Parreco for $53,500. Settlement was concluded on 25 May. The broker learned of the sale some time in June and promptly demanded $3,210 (6% of $53,500). Burton denied any liability. Suit was filed in the Circuit Court for Prince George's County on 30 June.

The broker directs our attention to the clause in the listing agreement which reads as follows:

> "If during this listing period the property is sold by you or me/us or anyone else; or if you, or any member of the Multiple Listing System, produce a purchaser ready, willing and able to purchase the property; or if within two months after the expiration of this listing contract a sale is made to any person to whom the property has been shown by you or by any member of the Multiple Listing System, I agree to pay you a brokerage fee of 6% of the sales price."

Conceding its right to recover must be found in the agreement, the broker argues that it did produce, during the 4 month period, "a purchaser ready, willing and able to purchase the property," namely, Parreco. The court, it insists, cannot write into the agreement the words "upon the terms of the listing" or "upon the vendor's terms" or "for $57,000." We take a somewhat different view.

The listing agreement is a printed form which on its face states that it "is the property of the Montgomery County Board of Realtors, Inc. and [that it is] for members' use only." It reflects an obvious concern for the interests of the realtors and very little, if any, for owners who, for instance, are required by the printed matter to pay the placement fees arising out of any loan needed by a buyer. Another provision requires the owner to accept a second mortgage or deed of trust for any balance over and above an existing mortgage, a provision, it should be noted, which was stricken from this contract. Adoption of the construction urged by the broker would require the complete disregard of the balance of the agreement. Burton did not employ the broker to produce a buyer "ready, willing and able" to buy at *any price*. The broker was given "the exclusive privilege for four months" to sell Burton's property "for $57,-000." In the succeeding paragraph it is stated flatly that the "minimum cash that can be considered is $57,000." In our judgment the "purchaser" contemplated by the agreement must be a person "ready, willing and able" to buy on the *seller's terms*. To hold otherwise would be to reduce the agreement to an absurdity. As has been said, the agreement was prepared, in large part, for the broker and it was completed by its agent. We see no ambiguity in it but even if it could be said to be ambiguous it would, of course, have to be construed against the broker. *Cadem v. Nanna,* 243 Md. 536, 544, 221 A. 2d 703 (1966).

It is wholly clear that a purchaser ready, willing and able to buy on the seller's terms was not produced by the broker during the 4 month period and that Burton's sale to Parreco did not take place until after the expiration of the extra "two month" period. Having failed to bring itself within the requirements of its own contract the broker is not entitled to recover. *Rutherford v. Mancuso,* 180 Md. 628, 26 A. 2d 374 (1942).

We have examined the cases cited by the broker, and many others as well. In all of the cases apposite to the case at bar the relationship between the broker and the owner had not been established by a contract of fixed duration.

*Judgment affirmed.*
*Costs to be paid by the appellant.*